**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **HAIGUANG ZHENG**, | |
| *Petitioner*, | No. 26-cv-01689 |
| v. | |
| **ERIC ROKOSKY, *et al.*,** | **OPINION** |
| *Respondents*. | |

**O'HEARN, District Judge.**

Petitioner, Haiguang Zheng, is a non-citizen who was recently detained at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey, and filed a counseled Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). The Court granted the Petition and ordered Petitioner released on March 11, 2026. (ECF No. 9). This Opinion supplements the Court's Order.

## I.    BACKGROUND

Petitioner is a native and citizen of China. (Answer, ECF No. 6-1 at ¶ 8). He entered the United States on or about September 18, 2023. (*Id.* at ¶¶ 8, 39). He was initially detained but then released on his own recognizance. (*Id.*) He filed an application for asylum, claiming a fear of persecution if returned to China based on his religion. (*Id.*; Gov't Ex. E). Petitioner alleges he complied with all reporting requirements since his release and that he is employed and pays taxes. (Pet., ECF No. 1 at ¶¶ 8, 39; Gov't Ex., ECF No. 6-5 at 4). He has no criminal record. (Answer, ECF No. 6-1 at ¶ 39).

Immigration and Customs Enforcement ("ICE") agents detained Petitioner on October 11, 2025, when he appeared at a previously scheduled routine check-in appointment. (Pet., ECF No.

1 at ¶ 8; Answer, ECF No. 6-1 at ¶ 8; Gov't Ex. E). He remained detained at the time the petition was filed. (Answer, ECF No. 6-1 at ¶ 8; Kish Decl., ECF No. 6-2 at 2).

Petitioner first petitioned this Court for a writ of habeas corpus on November 10, 2025. *Zheng v. Bondi*, No. 25-17329 (D.N.J. Dec. 8, 2025), ECF No. 1. On November 18, 2025, the Court issued an order finding that Petitioner's mandatory detention under 8 U.S.C. § 1225 was unlawful and that he could only be detained pursuant to 8 U.S.C. § 1226.[1] *Id.*, ECF No. 8. The Court ordered Respondents to provide Petitioner with a bond hearing as required by § 1226(a). *Id.* Petitioner was thereafter provided a bond hearing pursuant to the Court's Order on November 19, 2025, and bond was denied. *Id.*, ECF Nos. 11, 13.

Petitioner filed a second Petition on February 19, 2026. (ECF No. 1). He alleged that the bond hearing he received was not fundamentally fair and thus violated the Fifth Amendment's Due Process Clause. (Pet., ECF No. 1 at ¶¶ 51–53). Specifically, he alleged that the Immigration Judge ("IJ") "failed to meaningfully evaluate [his] extensive record of compliance with all immigration court appearances and ICE reporting requirements," "failed to give appropriate weight to Petitioner's lack of any criminal history, as confirmed by the Government's own Form I-213," and "failed to conduct a genuine individualized assessment of flight risk or danger." (*Id.*) The Court

---

[1] In doing so, this Court joined the hundreds of courts around the country that have rejected the Government's application of § 1225 to non-citizens who, like Petitioner, were detained in the interior of the United States after residing here for an extended period of time. *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. 2025) (noting "the law is clear" and that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct."); *see also* App., *Demirel*, 2025 WL 3218243 (ECF No. 11-1) (collecting cases). The Court is aware of the Fifth Circuit's decision reaching a contrary conclusion. That decision, however, is not binding on this Court, and the Court is unpersuaded by its reasoning for many of the reasons articulated in Judge Douglas's dissent, including that the majority's interpretation risks rendering significant portions of the statutory scheme superfluous and internally inconsistent. *See Buenrostro-Mendez v. Bondi*, _____ F.4th _____, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

ordered Respondents to file an expedited Answer and provide, among other things, the decision and transcript from Petitioner's bond hearing. (ECF No. 4). Respondents filed their Answer on March 9, 2026, (ECF No. 6), and the Court held a hearing on March 10, 2026.

According to the transcript of the bond hearing, Petitioner's counsel argued that Petitioner was reconciling with his ex-wife and child who reside in the United States with green cards. (ECF No. 6-5 at 4). He further argued that Petitioner had no criminal history and had been working and paying taxes. (*Id.*) For these reasons, he argued that Petitioner was therefore unlikely to flee and confirmed that Respondents had already seized his passport. (*Id.*)

But Respondents' counsel—despite this Court's Order explicitly holding the contrary—continued to assert at the bond hearing that Petitioner was "properly detained" under § 1225(b) and that the IJ thus lacked "authority to redetermine" Petitioner's custody pursuant to the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (ECF No. 6-5 at 4–5). Respondents' counsel further asserted that Petitioner presented a "significant flight risk which no bond can ameliorate" because he had no "significant community ties," though he acknowledged that Petitioner's ex-wife and child reside in the United States, and because he had no documented employment history. (*Id.*) He also emphasized that Petitioner was subject to a forthcoming removal order, which was a "significant adverse factor" because Petitioner had "no documented history of reporting in court." (*Id.* at 5–6).

After hearing these brief arguments from counsel, the IJ stated the following:

> The Court is going to deny bond in this case, **although I understand this was an order from the district court based on precedent decisions that bind the immigration court, the Court still finds the Court would lack jurisdiction for bond**. But in the alternative, the Court would find that the [Petitioner], although he's not a danger to the community, he does present a significant flight risk for which no amount of bond would ameliorate the flight risk. So the Court is going to deny bond in this case.

3

*Id.* at 6 (emphasis added). The IJ's Order states that bond was denied for "Lack of jurisdiction and alternatively, flight risk." (ECF No. 6-4). Petitioner's counsel at the time waived appeal and indicated that he would proceed instead in federal district court. (ECF No. 6-5 at 7).

After the bond hearing, an order of removal was entered on November 24, 2025, which is not final and remains on appeal. (Gov't Resp., ECF No. 6 at 2; Pet. Ex., ECF No. 1-6). At the time the Court ordered his release, Petitioner had been detained for 150 days.

## II.    STANDARD OF REVIEW AND JURISDICTION

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025).

As Petitioner was detained in New Jersey at the time he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider his claims. For the reasons discussed below, Petitioner was not required to exhaust any administrative remedies before pursuing relief in this Court because he is seeking to enforce a prior habeas order from this Court and because such efforts would be futile. *See, e.g.*, *Vimos v. Fed. Det. Ctr. Philadelphia*, No. 26-780, 2026 WL 381173, at *4 (E.D. Pa. Feb. 11, 2026); Memorandum Order at 5–6, *A.D. v. Oddo*, No. 25-00460 (W.D. Pa. Feb. 12, 2026), ECF No. 40.

4

Finally, while this Court does not have jurisdiction to review the IJ's discretionary decision to grant or deny bond, it may review whether a bond hearing was fundamentally unfair and thus violated the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at \*2 (3d Cir. Feb. 25, 2022). This "preserves a district court's inherent power to enforce its habeas orders by ensuring that the individualized bond hearings are not shams and otherwise comply with the detainee's due process rights." *Shonhai v. Lowe*, No. 24-229, 2026 WL 538865, at \*10 (M.D. Pa. Feb. 26, 2026).

## III.    DISCUSSION

The Court's analysis proceeds in three stages. First, the Court concludes that Petitioner is entitled—both statutorily and as a matter of due process—to a bond hearing. Second, the Court explains why the hearing Petitioner received was fundamentally unfair. Third, the Court determines that, given the nature of the constitutional violations and the record before it, release is the only appropriate remedy.

### A.  The Statutory Scheme and Due Process Require a Bond Hearing

The Court first acknowledges that Respondents unquestionably possess the authority to detain non-citizens during removal proceedings when Congress has authorized them to do so under § 1226(a). *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020). But under that statute and its implementing regulations, Respondents must also provide detainees with a "prompt bond hearing." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."); 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1), 1003.19, 1236.1(d)(1).

Not only do the statute and federal regulations require a bond hearing, the Constitution does as well. The Fifth Amendment of the U.S. Constitution protects all persons in this country, including those alleged to have entered illegally, from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690; *see also id.* at 721 (Kennedy, J., dissenting) ("Still, both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious."). What process is due is determined by analyzing both the private and governmental interests affected. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

This Court held that the bond hearing requirement is constitutional in *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397 (D.N.J. 2025), applying the *Mathews* framework after concluding that the petitioner's detention under § 1225 was unlawful. As the Court explained in that case, Petitioner has a paramount private interest in his physical liberty, the risk of erroneous deprivation without a bond hearing is high, and the Government's presumed interest in detaining non-citizens who are dangerous or flight risks is not unduly burdened by the procedural requirement of a bond hearing. *See id.* at 409–10. Other courts have reached the same conclusion, recognizing that the right to a bond hearing in immigration detention cases like this one is grounded not merely in the statute but in the Constitution itself.[2] *See Vimos*, 2026 WL 381173, at *5 (citing cases) ("Courts have held that the right to a bond hearing is not merely statutory, but constitutional."); *see also supra* n.1 (collecting cases).

Having determined that Petitioner, who is being held under § 1226(a), is constitutionally and statutorily entitled to a bond hearing,[3] the Court turns next to the question of whether the hearing he received was fundamentally fair and comported with due process. The Court concludes that it was not.

---

[2]  Indeed, the Third Circuit has made clear that due process can require a bond hearing for criminal aliens detained under § 1226(c) once detention becomes unreasonably prolonged—even though that provision does not itself authorize release on bond. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). Certainly, if the Constitution can require a bond hearing for aliens convicted of crimes held under a statutory provision that does not provide for bond at all, it necessarily can require one for non-citizens detained under § 1226(a), which expressly contemplates release and applies to individuals without disqualifying criminal convictions.

[3]  The Court need not decide precisely when the due process requirement for a bond hearing under § 1226(a) is triggered to find that due process, as applied to Petitioner, requires a hearing in this case. The Court also does not decide what process is required for a non-citizen who has been properly mandatorily detained under § 1225(b) as that question is not presently before the Court.

### B. Petitioner's Bond Hearing Was Fundamentally Unfair

For a bond hearing to be fundamentally fair and comport with due process, a detainee "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Ghanem*, 2022 WL 574624, at *2 (alteration in original) (footnote omitted).[4] A bond hearing is individualized "if it is not so arbitrary that it would offend fundamental tenets of due process" and "if there is a discernible rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards, that suffices." *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026) (quotation marks and citation omitted). These requirements presuppose an impartial decisionmaker. *See Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). They also require that the decision be grounded in the evidence presented at the hearing and accompanied by a statement indicating the reasons for the decision and the evidence relied upon. *Id.* Absent such features, a bond hearing cannot satisfy the demands of due process.

The Court acknowledges that the standard of review is quite deferential, and courts infrequently invalidate a bond hearing as constitutionally deficient.[5] This Court is not permitted to

---

[4] *See also Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019); *Abdulai v. Ashcroft*, 239 F.3d 542, 549–50 (3d Cir. 2001), superseded by statute on other grounds by, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 305, 310, as recognized in *Saravia v. Att'y Gen.*, 905 F.3d 729, 736 (3d Cir. 2018); *Zadvydas*, 533 U.S. at 721 (Kennedy, J., dissenting) ("Whether a due process right is denied when removable aliens who are flight risks or dangers to the community are detained turns, then, not on the substantive right to be free, but on whether there are adequate procedures to review their cases.").

[5] However, the Court observes that tendency appears to be changing as there is a growing number of courts finding bond hearings procedurally and constitutionally deficient. *See* Kyle Cheney, *Judges Keep Ordering Immigration Hearings — But Say the Results Are Often a Sham*, POLITICO (Mar. 6, 2026), https://www.politico.com/news/2026/03/06/immigration-case-hearings-judges-00815660.

re-weigh evidence or determine credibility; that is committed to the discretion of the IJ. *See Ghanem*, 2022 WL 574624, at *3. Nevertheless, a "decisionmaker must actually consider the evidence and argument that a party presents," and denies due process when it acts "as a mere rubber-stamp." *Abdulai*, 239 F.3d at 549 (citation omitted). The decision as to whether a bond hearing was fundamentally fair is necessarily a fact-sensitive inquiry. Here, because the IJ erroneously stated that she lacked jurisdiction in direct defiance of this Court's Order, failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk, and by all appearances acted as a "mere rubber-stamp," *id.*, for Respondents' predetermined decision to deny bond, the Court easily finds that Petitioner's bond hearing was fundamentally unfair and violated his due process rights.

From the moment the hearing began, it was evident that the bond hearing was not conducted in accordance with this Court's Order and was fundamentally unfair. Respondents' assertion at the bond hearing that Petitioner was "properly detained" under § 1225(b) and that the IJ lacked authority to redetermine his custody flagrantly disregarded this Court's Order and tainted the proceedings from the outset. Sadly, there is now an established pattern of Respondents violating judicial orders.[6] On November 18, 2025, this Court entered an Order holding that Petitioner could not be mandatorily detained under § 1225(b), and that he should be detained under § 1226(a). That Order was clear and unambiguous and left no room for interpretation. Respondents did not appeal or seek a stay of that order. Nevertheless, Respondents continued to assert, at the bond hearing this Court ordered, that Petitioner was detained under § 1225(b)—effectively inviting

---

[6] *See Cartagena Hueso v. Soto*, No. 26-1455, slip op. at 6 (D.N.J. Feb. 26, 2026) ("[W]hile the procedures for the Government's immigration arrest and detention may have had the initial appearance of negligence, they have since slid downward into manifest recklessness."); Order to Show Cause, *Singh v. Tsoukaris*, No. 26-01531 (D.N.J. filed Feb. 17, 2026), ECF No. 10.

the IJ to simply disregard this Court's Order as if it did not exist. And although the IJ referenced this Court's Order, she nevertheless wrongfully and boldly stated that she "still" lacked jurisdiction. This statement reveals a fundamental misunderstanding, or ignorance, as to the meaningful and important difference between Article III courts and immigration courts. The immigration courts and the BIA, though colloquially referred to as courts, are part of the Executive Branch, and as such their decisions cannot "override the binding judgment of an Article III Court adjudicating an actual case or controversy between the parties." *Rodriguez Vazquez v. Hermosillo*, ____ F. Supp. 3d ____, No. 25-05240, 2026 WL 102461, at *6 (W.D. Wash. Jan. 14, 2026) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024)). Faced with an indefensible and clear violation of this Court's Order, Respondents concede that it was improper for their counsel to assert at the bond hearing, and for the IJ to hold in her decision, that Petitioner was detained under § 1225(b) and that she lacked jurisdiction. (Hearing Tr. at 25). Yet Respondents, incredulously, maintain that the hearing was nevertheless fair.

But because the IJ found that she "still" had no jurisdiction to determine bond, Respondents cannot plausibly assert that Petitioner received an individualized determination. Indeed, the IJ's jurisdictional finding would apply to nearly every case that comes before her given the Government's novel and expansive interpretation of § 1225(b) and the BIA's decision in *Hurtado*. At that point, the outcome was effectively determined, and Petitioner's fate was sealed. It is axiomatic that once a tribunal determines it lacks jurisdiction, it ends the case and does not proceed to the merits. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

10

Even if this Court were to disregard the IJ's finding that she "still" lacked jurisdiction, no reasonable reading of the transcript could support that Petitioner received an "individualized determination" as to bond. *Ghanem*, 2022 WL 574624, at *2; *see also Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 679 (W.D. Tex. 2025) ("This is unlike a case in which a bond hearing was held, an individualized assessment was made regarding the appropriateness of detaining a non-citizen, and, in the IJ's discretion, they were denied bail.").

The IJ held in the "alternative" that Petitioner, although not a danger to the community, presented a "significant flight risk for which no amount of bond would ameliorate that flight risk." (ECF No. 6-5 at 6). But she provided no analysis whatsoever and gave no indication of the factual basis for her decision. Respondents concede that the IJ "did not provide an analysis as to why she reached that decision" and that it is "unclear" how she reached that decision. (Hearing Tr. at 3–4). As such, it is impossible for this Court to perform any meaningful review of the IJ's decision and conclude that there was an individualized determination. The transcript is devoid of any indication that the IJ "actually consider[ed] the evidence and argument[s]" that the parties presented; rather, she "mere[ly] rubber-stamp[ed]" the Respondents' decision to deny bond. *Abdulai*, 239 F.3d at 549; *see also Goldberg*, 397 U.S. at 271 (holding that the decisionmaker "should state the reasons for his determination and indicate the evidence he relied on"); *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972) (same). Due process demands more.

This case is easily distinguishable from cases where courts have upheld the fundamental fairness of a bond determination. For example, in the case on which Respondents rely, *De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026), the IJ, in finding Petitioner a flight risk noted: "the lack of evidence of a fixed address"; that "the only relative listed by Petitioner lived in Massachusetts and Petitioner admitted that he had not lived in Massachusetts in

the past four years"; and "that Petitioner overstayed his visa by four years, waited until two days before the bond hearing to apply for asylum, and provided no explanation why he did not apply for asylum at any point in the past four years."

In *Quinteros*, the Third Circuit reviewed a bond hearing under § 1226(c) for fundamental fairness. There, the IJ held that the petitioner was both a "continued danger to the community" and an "extreme flight risk." Brief of Petitioner-Appellant at 6, *Quinteros*, 784 F. App'x 75. In support of its decision, the IJ cited the petitioner's prior conviction for conspiracy to commit assault, which it deemed "inherently dangerous." *Id.* On appeal, the Third Circuit held that the "record confirms the IJ considered specific details of Quinteros' case before issuing an assessment particular to Quinteros." 784 F. App'x at 78. Meanwhile, in *Ghanem*, the IJ issued a formal "Bond Memorandum" which "detailed the reasons for denial of bond" including specific citations to police reports. 2022 WL 574624, at *1–3.

Here, the IJ's decision stands in stark contrast to these decisions as it is not supported by any detail or reference to *any* factual evidence in the record. The IJ did not provide even a minimal articulation of the basis of her decision. She simply stated in mere conclusory fashion that Petitioner was a flight risk.[7] That is not an individualized assessment. This was not a fundamentally fair bond hearing.

---

[7] To the extent the Government argues that the IJ's decision should be upheld because a reasonable decisionmaker *could* have reached the same conclusion based on this record, it is a cardinal rule of administrative law that a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted) (applying arbitrary and capricious review under the Administrative Procedure Act). And while a court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *id.* (citation omitted), here there is no way for the Court to even trace the path of the IJ's analysis because there was no analysis.

Other courts have found similar bond hearings to be constitutionally deficient. In one recent case, a court found a due process violation where, as here, "the IJ's decision … contains zero reference to any record or arguments put forth by either party." *Rodriguez v. Greene*, No. 26-0333, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026). The IJ in that case also denied bond "exclusively on jurisdictional grounds" and held in the "alternative" that the petitioner was a danger to the community and a flight risk "without supplying any reasoning [as to] how the IJ came to such a conclusion." *Id.* In another recent case, the court explained that, although it lacked jurisdiction to review discretionary decisions or reweigh evidence, review was appropriate where the IJ failed to explain the decision at all. *Miri v. Bondi*, No. 26-00698, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026). The *Miri* court held that the IJ abused their discretion because "the [IJ] did not explain the reasons for denying [petitioner's] bond. The [IJ] did not describe which … factors were considered, if any, or what evidence was relied on." *Id.* at *9. Another court found a bond hearing constitutionally inadequate where, among other things, "there [was] no record of the IJ's rationale in denying bond, and instead the decision is simply reflected by a one-page form." *Ramos v. Barr*, No. 20-06622, 2020 WL 13554813, at *3 (W.D.N.Y. Dec. 29, 2020). The same deficiencies are present here.[8]

Further, the Court is deeply troubled by the assertion by counsel for Respondents at the bond hearing that Petitioner had "no documented history of reporting in court." (ECF No. 6-5 at 6). Respondents argued that this purported lack of reporting history coupled with Petitioner's

---

[8] Still other courts have held that a bond hearing does not comply with due process if the IJ fails to consider alternatives to detention, such as release with monitoring. *See Costa v. McDonald*, No. 25-13469, 2026 WL 371198 (D. Mass. Feb. 10, 2026) (collecting cases). The Court finds this reasoning persuasive, but need not decide today whether due process requires consideration of alternatives to detention because the IJ's decision here reflects no consideration of the record or any individualized determination whatsoever.

forthcoming removal order was a "significant adverse factor" supporting a finding that he posed a flight risk. (*Id.* at 5–6). But there was absolutely no evidence in the record that Petitioner had ever been required to report in court and failed to do so, and Respondents now concede that even today they have no such evidence. (Hearing Tr. at 5). On the other hand, Petitioner alleges that he complied with all reporting requirements and was in fact detained while appearing for a routine check-in. (Pet., ECF No. 1 at ¶¶ 8, 39). That assertion is consistent with Respondents' own records, which indicate that ICE agents first encountered and detained Petitioner after he **"appeared before an Immigration Judge [at] 26 Federal Plaza, New York, NY**."[9] (Gov't Ex. E). Notably, Petitioner appeared even though he was likely well aware that he could be detained and thus chose to comply with his reporting requirements rather than preserve his liberty.

At a minimum, therefore, Respondents materially misrepresented Petitioner's reporting history. More likely, the assertion was outright false. A hearing cannot be fundamentally fair when one of the Respondents' principal arguments rests on an assertion for which they concede there is no evidentiary support. *See Montero-Martinez v. Mattos,* No. 25-02391, 2026 WL 674497 (D. Nev. Mar. 9, 2026) (finding petitioner's due process rights were violated when his bond was revoked after ICE falsely asserted that he had been arrested for driving under the influence); *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 408 (3d Cir. 2003) (finding a due process violation when

---

[9] The records indicate that ICE agents "encountered" Petitioner at this location on October 11, 2025, the same day he appeared before an Immigration Judge. They then conducted a records check which revealed he was in removal proceedings and subsequently detained him. Accordingly, not only had Petitioner previously appeared for court, he appeared the very day that he was detained.

the BIA relied on a letter that contained multiple levels of hearsay and was thus "neither reliable nor trustworthy").[10]

Finally, the Court cannot ignore that the circumstances surrounding these proceedings raise substantial concerns as to whether any non-citizen can receive the impartial hearing that due process requires. As one court observed long ago, judges need not "shut our eyes to matters of public notoriety and general cognizance. When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see" as ordinary members of society. *Ho Ah Kow v. Nunan*, 12 F. Cas. 252, 255 (C.C.D. Cal. 1879). Respondents have reportedly terminated nearly one hundred IJs in recent months.[11] And now openly advertise these vacancies for "deportation" judges. *YOU BE THE JUDGE*, U.S. DEP'T OF JUST., https://join.justice.gov/ (last visited March 20, 2026). These developments, among others, raise a serious question as to whether the constitutional guarantee of an impartial decisionmaker is being honored in any case brought before an IJ.

---

[10] *Cf. Maxwell v. Roe*, 628 F.3d 486, 506 (9th Cir. 2010) ("A conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness." (citation omitted)); *Crider v. Williams,* No. 21-13797, 2022 WL 3867541, at *9 (11th Cir. Aug. 30, 2022) ("[T]here can be no fundamentally fair procedure when the procedure is based on false statements." (quotation marks omitted)); *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991) (finding a violation of due process when parole was denied based on admittedly false evidence).

[11] *See, e.g.*, Anusha Mathur and Ximena Bustillo, *U.S. Has a Quarter Fewer Immigration Judges Than It Did a Year Ago. Here's Why*, NPR (Feb. 23, 2026), https://www.npr.org/2026/02/23/g-s1-110911/trump-immigration-judges-dismissals-numbers (quoting one former IJ as saying: "You are telling every other judge that is left that they better not be following the law or their conscience; that they need to apply the law as you are interpreting it."); E. Tammy Kim, *Inside Donald Trump's Attack on Immigration Courts*, NEW YORKER (Oct. 23, 2025), https://www.newyorker.com/inside-donald-trumps-attack-on-immigration-court (quoting a former official: "What this Administration wants is a rubber stamp."); Eric Katz, *'Climate Of Fear': Immigration Judges Say Functioning of Their Court System is in Jeopardy Due to Trump's Firings*, GOV'T EXEC. (Nov. 14, 2025), https://www.govexec.com/management/2025/11/climate-fear-immigration-judges-say-functioning-their-court-system-jeopardy-due-trumps-firings/409544/.

In sum, Respondents disregarded this Court's order by continuing to assert that Petitioner was detained under § 1225(b), and the IJ accordingly wrongfully concluded that she lacked jurisdiction to adjudicate bond. Once that determination was made, no individualized determination could have been. The IJ's unexplained "alternative" finding that Petitioner posed a flight risk—offered without any reasoning or reference to facts in the record—does not ameliorate the defect. Further, Respondents relied on an unsupported claim that Petitioner had no history of reporting in court, an assertion the Respondents now concede lacked any evidentiary basis. A proceeding conducted in this manner simply cannot be described as an individualized bond determination. It is instead the exact "rubber-stamp" process that due process forbids. *Abdulai*, 239 F.3d at 549.

### C. Immediate Release Is the Appropriate Remedy

Having determined that Petitioner's bond hearing was fundamentally unfair in violation of his due process rights, the Court now turns to the question of the appropriate remedy. Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate bond hearing. Petitioner has already been detained for five months. As such, the Court, applying *Zadvydas, Borbot*, and *German Santos*, finds that Petitioner's detention has become so unreasonable that, coupled with the absence of any justification from Respondents to support continued detention, the only just remedy in these circumstances is immediate release.

In *Borbot*, the Third Circuit recognized the possibility that detention under § 1226(a) might become unreasonably prolonged even after an initial bond hearing. 906 F.3d at 280. It declined, however, to delineate the point at which detention would become so prolonged as to render it

16

unreasonable and thereby trigger additional procedural protections.[12] *Id.* Nevertheless, the Court is able to discern the outer bounds based on the logic of *Zadvydas*, which underscores the temporal limits of permissible detention and the appropriate burden shifting framework. 533 U.S. 678. In *Zadvydas*, the Supreme Court held that detention following a final order of removal is presumptively reasonable for six months, after which continued detention requires justification by the government. *Id.* at 701. Notably, that presumption applies where the Government's interest is presumably at its apex—after a final order of removal has issued.

Here, Petitioner has already been detained for five months without any final order of removal and without receiving a constitutionally adequate bond determination. It would be illogical to conclude that individuals awaiting removal proceedings possess fewer due process rights than those who have already been ordered removed. Respondents agree. (Hearing Tr. at 11). If the Constitution imposes limits on detention after a final order of removal, it necessarily imposes at least comparable limits, and requires meaningful procedural safeguards, before one is entered. Accordingly, the Court finds that where, as here, the duration of detention approaches the outer limits recognized in *Zadvydas*, at which point continued detention is presumptively unreasonable absent justification, and the detainee has yet to receive a constitutionally adequate bond determination, due process requires, at a minimum, that the burden shift to the Government to justify continued detention with clear and convincing evidence.

---

[12] The Court notes that, to the extent that the Third Circuit held in *Borbot* that the duration of detention alone generally cannot sustain a due process challenge under § 1226(a), that holding was limited to cases where the detainee has received an initial bond hearing free from constitutional defect. *Id.* at 276–77, 279. Here, by contrast, Petitioner has never received a fundamentally fair hearing. Moreover, Petitioner was initially subjected to unlawful detention under § 1225(b) and obtained a bond hearing only through habeas relief. This case therefore does not present a challenge based on duration alone, but rather one involving multiple constitutional violations.

Under normal circumstances, detainees bear the burden of proof during § 1226(a) proceedings. *Borbot*, 906 F.3d at 279. But, as one court aptly observed, "these are not normal circumstances." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1242 (D.N.M. 2025). And "[n]either the Supreme Court nor the [Third] Circuit has directly addressed whether the burden of proof should shift when a non-citizen has been unlawfully detained in violation of the Due Process Clause." *Id.*; *see also Borbot*, 906 F.3d at 279. Thus, this Court, following other courts in this District and around the country, finds that due process, as applied to Petitioner, now requires the Government to bear the burden of proof at any subsequent bond hearing in the event he is re-detained. *See, e.g.*, *Velasco Lopez*, 978 F.3d 842 (holding that the burden of proof must shift to the Government after prolonged detention under § 1226(a)); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (holding that the Government always bears the burden of proof in § 1226(a) bond hearings).

The factors identified by the Third Circuit in *German Santos* further support the conclusion that Petitioner's detention has become unreasonable such that the burden must shift to Respondents. 965 F.3d at 211–13. While *German Santos* involved detention under § 1226(c) and is not strictly applicable here, Respondents argue that the Court should consider it as instructive in this context, (Hearing Tr. at 9–11), and at least one court in this District has opted to apply the *German Santos* factors to detainees under § 1226(a), *see A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136 (D.N.J. Mar. 3, 2026). In the absence of a clearly defined standard in this context, the Court finds the *German Santos* factors to be a useful and persuasive framework for assessing the reasonableness of detention under § 1226(a), and therefore considers them, along with guidance from analogous cases, in evaluating Petitioner's claim.

In assessing the constitutionality of prolonged immigration detention, the *German Santos* court considered: 1) the duration of detention; 2) the likelihood that detention will continue; 3) the reasons for the delay, including bad faith; and 4) the conditions of confinement. *Id.*; *German Santos*, 965 F.3d at 211–13. Each of those factors favors Petitioner here.

First, with respect to duration, Petitioner has already been detained for a substantial period, five months, a period after which even mandatory detention under § 1226(c) "becomes more and more suspect." *German Santos*, 965 F.3d at 211 (citation omitted). Second, there is also no indication that Petitioner's detention will end in the near future, as his removal proceedings remain ongoing and may continue for months, particularly in light of the fact that the immigration courts remain overburdened. *A.J.R.*, 2026 WL 592136, at *3. Respondents could not give this Court any representation as to how much time will pass before those proceedings conclude and a final removal order is entered. (Hearing Tr. at 11). Third, the record does not suggest that Petitioner is responsible for any meaningful delay in those proceedings; the Third Circuit has made clear that non-citizens should not be penalized for pursuing available legal relief or defending against removal. *See German Santos*, 965 F.3d at 212. If anything, as explained above, Respondents have shown bad faith by continuing to assert at the bond hearing that Petitioner was being detained under § 1225(b) even after this Court's Order otherwise. Finally, although immigration detention is civil in nature, Petitioner by all accounts remains confined in conditions that closely resemble criminal incarceration, which further heightens the liberty interests at stake. *See id.* at 212–13; *Clarke v. U.S. Dep't of Homeland Sec.*, No. 25-6773, 2025 WL 3674471, at *6 (E.D.N.Y. Dec. 18, 2025) ("The evidence presented to this Court, which has been largely unrebutted, demonstrates that ICE has been deploying its 'holding rooms' in a manner that shocks the conscience."). Taken

together, these considerations confirm that Petitioner's continued detention has become unreasonable and cannot be justified in the absence of meaningful procedural safeguards.

Thus, as informed by *Zadvydas* and reinforced by the factors identified in *German Santos* in the § 1226(c) context, the Court concludes that Petitioner's five-month detention—without a final order of removal and without a constitutionally adequate bond determination—has reached the point at which continued detention is presumptively unreasonable, and the burden shifts to the Government to justify it with clear and convincing evidence.

But, while simply ordering a second bond hearing at which that burden is applied may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the constitutional injury he has suffered. Courts across the country confronting due process violations akin to that here have recognized that a new hearing would either be unnecessary, futile, or an inadequate remedy. *See, e.g.*, *Oddo*, No. 25-00460, ECF No. 40 (finding petitioner's bond hearing fundamentally unfair when he was not provided a translator and ordering release after detention of at least two months); *Mattos,* 2026 WL 674497, at *2 (ordering release when bond was revoked based on false evidence). Those same concerns are present here and weigh in favor of release.

To begin, the record before the Court is entirely devoid of any individualized justification for Petitioner's continued detention, and Respondents have not pointed to any evidence that could satisfy their heightened burden even if afforded the opportunity. Indeed, the record affirmatively undermines continued detention, as Petitioner has previously been released on his own recognizance due to humanitarian reasons and a lack of detention space. (Gov't Ex. E). Thus, Respondents effectively conceded that he posed neither a danger nor a flight risk, and little has changed since that determination was made in September 2023. *See* 8 C.F.R. § 236.1(c)(8)

20

(providing for discretionary release if the alien demonstrates that they would not pose a danger to persons or property and are likely to appear at future proceedings); 8 C.F.R. § 212.5(b) (providing for humanitarian parole when "aliens present neither a security risk nor a risk of absconding"); *Singh v. Baltazar*, ____ F. Supp. 3d ____, No. 26-00336, 2026 WL 352870, at *3 (D. Colo. Feb. 9, 2026) (declining to order a bond hearing where the Government had previously released the petitioner on recognizance). Further, as explained above, Petitioner has a history of complying with requirements to appear in court. Under these circumstances, remanding for another hearing is unnecessary.

Nor is there any reason to believe that a second hearing would be fundamentally fair. Because the IJ stated that she "still" lacked jurisdiction to determine bond despite this Court's Order, and because Respondents have not disavowed their interpretation of § 1225(b) or their reliance on *Hurtado*, there is a substantial risk that any subsequent hearing would merely replicate the same legal error. In *Rodriguez-Acurio v. Almodovar*, ____ F. Supp. 3d ____, No. 25-6065, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025), the court concluded that ordering even an initial bond hearing under such circumstances would be "Kafkaesque" because it would inevitably result in denial or reversal on appeal. That court's concerns were borne out by this case. As explained above, the circumstances surrounding these proceedings also raise doubts about their impartiality.

21

Finally, as Petitioner has already been deprived of his liberty for five months, release is the only just remedy. *See Hernandez v. Ladwig*, No. 26-02081, 2026 WL 324020, at \*9 (W.D. Tenn. Feb. 6, 2026) (ordering release where violations of § 1226(a) and due process had already deprived the petitioner of his liberty for three months.) Requiring Petitioner to endure further detention would only compound the constitutional violation. Accordingly, rather than merely ordering a second bond hearing, the Court concludes that immediate release is the appropriate remedy and that any future attempt to re-detain Petitioner under § 1226(a) must comport with due process, which means placing the burden on the Government to justify continued detention.[13]

Indeed, this Court, following many others around the country,[14] no longer orders even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, *see Cartagena Hueso*, slip op. at 6, and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications. Thus, if Petitioner's first petition had come before this Court just a few weeks later he would have already been ordered released. The

---

[13] To be clear, the Court's prior Release Order, (ECF No. 9), does not permanently enjoin Respondents from re-detaining Petitioner under the appropriate statutory authority, including § 1226(a). The Court has held only that detention under § 1225 is unlawful. Should Respondents elect to re-detain Petitioner under § 1226, they must provide a prompt bond hearing, at which the Government bears the burden of justifying continued detention by clear and convincing evidence, and would then have the opportunity to supplement the record beyond what is currently available to the Court.

[14] *See, e.g.*, *Ramos v. Rokosky*, No. 25-15892, 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Huang v. Almodovar*, No. 25-9346, 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Rodriguez-Acurio*, 2025 WL 3314420; *Quispe v. Rose*, ____ F. Supp. 3d ____, No. 25-02276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025); *Salinas v. Woosley*, No. 25-121, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025); *Elias v. Knight*, ____ F. Supp. 3d ____, No. 25-00594, 2025 WL 3228262 (D. Idaho Nov. 19, 2025); *Faizyan v. Casey*, No. 25-2884, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Simanca Gonzalez v. Aldridge*, No. 26-0055, 2026 WL 313476 (S.D.W. Va. Feb. 5, 2026).

Court's change of remedy in such cases has been vindicated by the facts of this case. Respondents were given an opportunity to cure their earlier constitutional violation by providing Petitioner a fundamentally fair bond hearing. They woefully failed to do so. The Court declines to make Petitioner wait while Respondents get a third bite at the apple. Due process demands that he go free.

## CONCLUSION

In short, Petitioner has been detained for months without receiving the fundamentally fair bond determination that both the statute and the Constitution require. Respondents brazenly disregarded this Court's Order, the IJ wrongly concluded that she "still" lacked jurisdiction to adjudicate bond, and the resulting decision of the IJ provided no meaningful rationale for Petitioner's continued confinement. When considered alongside the prolonged duration of detention and the principles articulated in *Zadvydas* and *German Santos*, these defects make clear that continued detention cannot stand. Because, on these facts, another bond hearing would serve little purpose and would only prolong a detention that has already become constitutionally problematic, the Court will grant the Petition and order Petitioner released.

DATED: March 23, 2026.

/s/ Christine P. O'Hearn_____
**Christine P. O'Hearn**
**United States District Judge**

23